UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10918-GAO

BAHAMAS BEY,
Plaintiff,

v.

SUZANNE M. SULLIVAN, Assistant United States Attorney,
Defendant.

ORDER
September 19, 2013

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has recommended that the defendant's motion to dismiss, or alternatively for summary judgment, be granted. The plaintiff has filed no objection to the Report and Recommendation. Having reviewed the relevant pleadings and submissions, I fully concur with the magistrate judge's recommendations and ADOPT those recommendations for the reasons outlined in the Report and Recommendation.

Accordingly, the defendant's Motion to Dismiss (dkt. no. 18) is GRANTED. The Complaint is DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BAHAMAS BEY,
     Plaintiff,

     v.                             CIVIL ACTION NO.
                                      11-10918-GAO

SUZANNE M. SULLIVAN,
Assistant United States Attorney,
     Defendant.

**REPORT AND RECOMMENDATION RE:**
**MOTION TO DISMISS, OR, IN THE ALTERNATIVE,**
**FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 18)**

**January 14, 2013**

**BOWLER, U.S.M.J.**

Pending before this court is a motion filed by defendant Suzanne M. Sullivan ("AUSA Sullivan"), an Assistant United States Attorney, styled as a motion to dismiss, or, in the alternative, for summary judgment. (Docket Entry # 18). On November 4, 2011, plaintiff Bahamas Bey ("plaintiff") filed an opposition to the motion. (Docket Entry # 20).

PROCEDURAL BACKGROUND

On May 20, 2011, plaintiff, an inmate at the Federal Correctional Institution El Reno in El Reno, Oklahoma ("FCI El Reno") filed this civil rights action against AUSA

Sullivan.  (Docket Entry # 1).  The complaint alleges
violations of the Civil Rights Act of 1871, 42 U.S.C. §
1983 ("section 1983"), the Federal Tort Claims Act, 28
U.S.C. §§ 2671-2680 ("FTCA"), the Privacy Act, 5 U.S.C. §§
552a-556 ("Privacy Act"), and breach of duty "to exercise
extreme care" for plaintiff's safety.  (Docket Entry # 1).

On May 25, 2011, the district judge issued a
Memorandum and Order outlining legal impediments to
plaintiff's claims and directed him to "demonstrate good
cause why this action should not be dismissed."  (Docket
Entry # 4).  The district judge also converted plaintiff's
claims under section 1983 to one brought under Bivens v.
Six Unknown Named Agents of Federal Bureau of Narcotics,
403 U.S. 388 (1971) (hereafter "Bivens claim"), because
AUSA Sullivan is a federal actor.  (Docket Entry # 4, p.
9).

Plaintiff filed a response to the show cause order on
June 27, 2011.  (Docket Entry # 8).  Plaintiff continued to
assert a section 1983 claim and reiterated AUSA Sullivan's
negligence for his holding cell placement and disclosure of
his private information.  (Docket Entry # 8, pp. 1 & 4).

On July 6, 2011, the district judge ordered the court
to construe the section 1983 claim as one under Bivens,
which incorporates plaintiff's claims regarding his holding

cell placement and the alleged violation of his privacy.
(Docket Entry # 9, p. 2).  In sum, the district judge
ordered:   (1) dismissal of the FTCA claim based on
plaintiff's intention to abandon the claim; (2) dismissal
of the negligence claims based on absolute immunity for
federal employees; and (3) allowance of the remaining
Bivens claim to continue.  (Docket Entry # 9, p. 6).

On October 26, 2011, AUSA Sullivan filed this motion
to dismiss or, in the alternative, for summary judgment.
(Docket Entry # 18).  This court issued a procedural order
on September 7, 2012, providing notice to the parties that
this court will consider the motion as a Rule 56, Fed. R.
Civ. P. ("Rule 56"), motion for summary judgment.

### STANDARD OF REVIEW

Summary judgment is appropriate when the record shows
"there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "A dispute is genuine if the
evidence about the fact is such that a reasonable jury
could resolve the point in the favor of the non-moving
party."  American Steel Erectors, Inc. v. Local Union No.
7, International Association of Bridge, Structural,
Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st
Cir. 2008) (internal quotations and citation omitted).  "A

3

fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Id.

Inferences drawn from the underlying facts are construed in "the light most favorable to the party opposing the motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues in the case is not significantly probative, summary judgment may be granted." Dávila v. Corporación De Puerto Rico Para La Difusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (internal quotations, ellipses and citation omitted); accord OneBeacon America Insurance Co. v. Commercial Union Assurance Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (where movant does not have burden of proof, summary judgment is obtained by showing "'an absence of evidence to support the nonmoving party's case'") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Nonmovants such as plaintiff "may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Rockwood v. SKF USA Inc., 687 F.3d 1, 9 (1st Cir. 2012) (internal quotations and citation omitted). "[C]onclusory

allegations, improbable inferences, and unsupported speculation [are] insufficient to discharge the nonmovant's burden." Id. (internal quotations omitted); see Chiang v. Verizon New England Inc., 595 F.3d 26, 30 (1st Cir. 2010) (noting requirement to ignore "'conclusory allegations, improbable inferences, and unsupported speculation'" on summary judgment).

FACTUAL BACKGROUND

Plaintiff was one of a number of targets in a criminal investigation known as the Montes Park Street Gang Drug Trafficking Investigation. (Docket Entry # 19, ¶ 1). A federal grand jury indicted plaintiff and 12 other individuals ("the defendants") on May 28, 2008, for cocaine distribution in violation of 18 U.S.C. § 841(a)(1). AUSA Sullivan was the assigned prosecutor for the 13 indicted individuals. (Docket Entry # 19, ¶ 2). Most of the defendants named in the Indictment were arrested and brought to the John Joseph Moakley U.S. Courthouse in Boston on May 29, 2008, for an initial appearance. (Docket Entry # 19, ¶ 3).

While awaiting his initial appearance on May 29, 2008, plaintiff was placed in a holding cell with ten members of the Montes Park Gang (the "gang"). (Docket Entry # 1, ¶ 5; Docket Entry # 19, ¶ 3). The holding cell placement caused

him emotional distress because two members of the gang allegedly killed his brother Elijah Bey. (Docket Entry # 1, ¶¶ 5-6). The two gang members accused of the murder were acquitted and were not in the holding cell with plaintiff. (Docket Entry # 19, ¶ 5). "The first time [AUSA Sullivan] learned of [plaintiff's] allegation that his brother was murdered by members of the [gang] was when [she] read [plaintiff's] letter," postmarked August 3, 2009. (Docket Entry # 19, Ex. B, ¶ 8).

During discovery prior to the criminal trial, AUSA Sullivan distributed to the defendants a number of documents. (Docket Entry # 19, ¶ 10). Among those documents were: (1) plaintiff's arrest booking form; (2) an incident report identifying the apartment where plaintiff was arrested and the names of people in the apartment at the time; (3) plaintiff's prior convictions; and (4) plaintiff's prior arrest reports. (Docket Entry # 19, Ex. B, ¶ 7). Plaintiff is concerned that AUSA Sullivan gave the indicted members of the gang the addresses of plaintiff's mother and girlfriend in the discovery documents and placed them in "imminent danger and immediate death." (Docket Entry # 19, Ex. C, pp. 7-9; Docket Entry # 1, ¶ 21).

6

Plaintiff pleaded guilty on August 11, 2009.  (Docket Entry # 19, p. 2).  While incarcerated at FCI El Reno, he underwent treatment with a psychiatrist for nightmares and symptoms of depression.  (Docket Entry # 1, Ex. 1, p. 2). Plaintiff's medical and psychological records indicate frequent complaints of an inability to sleep caused by recurring nightmares.  The nightmares "revolve around issues related to the murder of his brother as well as a prior situation where [plaintiff] was placed in a holding cell with numerous members of the gang that killed his brother."  (Docket Entry # 1, Ex. 1, p. 2).  Plaintiff progressed from "report[ing] nightmares most nights" on April 22, 2009, to "stat[ing] he has a nightmare every other week now" on March 17, 2010.  (Docket Entry # 1, Ex. 2, pp. 16 & 4).

## DISCUSSION

The remaining Bivens claim alleges that AUSA Sullivan: (1) placed plaintiff in a holding cell with violent gang members; and (2) disclosed private information regarding plaintiff's family members "for purposes of threatening, intimidating, or to cause [plaintiff] emotional distress." (Docket Entry # 9, p. 3).  AUSA Sullivan argues that the holding cell claim fails on the merits because:  (1) she was not involved in the decision about which holding cell

to place plaintiff; (2) she did not know about plaintiff's history with the gang and assertions concerning his brother's death; and (3) the gang members accused of killing plaintiff's brother were acquitted, rendering plaintiff's assertions speculative.  (Docket Entry # 19, p. 10).  AUSA Sullivan additionally argues that she is entitled to absolute immunity for her actions related to the distribution of discovery materials because of its intimate relationship with her role as a judicial officer.  (Docket Entry # 19, pp. 10-12).

Plaintiff challenges the truthfulness of AUSA Sullivan's statements regarding her knowledge of plaintiff's relationship with the gang.  (Docket Entry # 20, p. 4).  Plaintiff also submits that absolute immunity does not apply for policy reasons, including that it would leave his injury unredressed.  (Docket Entry # 8, p. 7).

I.  Absolute Immunity

The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991) (qualified immunity); see also Osborn v. Haley, 549 U.S. 225, 253 (2007) (absolute immunity); Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987) (qualified immunity); Mitchell v. Forsyth, 472 U.S. 511,

526 (1985) (absolute and qualified immunity); Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982) (absolute and
qualified immunity); accord Wood v. United States, 995 F.2d
1122, 1136 n.5 (1st Cir. 1993); Comeau v. Town of Webster,
Mass., 2012 WL 3042384, at *9 (D.Mass. July 24, 2012).
This is because "the entitlement is *an immunity from suit*
rather than a mere defense to liability." Mitchell v.
Forsyth, 472 U.S. at 526 (emphasis in original).
Therefore, this court first considers AUSA Sullivan's claim
of absolute prosecutorial immunity.

     "[A]s a general proposition," Bivens establishes
"'that victims of a constitutional violation perpetrated by
a federal actor may sue the offender for damages in federal
court despite the absence of explicit statutory
authorization for such suits.'" Soto-Torres v. Fraticelli,
654 F.3d 153, 157-158 (1st Cir. 2011) (quoting Ruiz Rivera
v. Riley, 209 F.3d 24, 26 (1st Cir. 2000)); see, e.g.,
Wilkie v. Robbins, 551 U.S. 537, 549 (2007). The purpose
of the implied private right of action under Bivens, which
serves as "the federal analog" to a suit against state
officials under section 1983, "'is to deter individual
federal officers from committing constitutional
violations.'" Soto-Torres v. Fraticelli, 654 F.3d at 158

(quoting Chiang v. Skeirik, 582 F.3d 238, 243 (1st Cir. 2009)).

AUSA Sullivan asserts absolute immunity to suit for plaintiff's injuries stemming from her release of discovery documents. The availability of immunity in a section 1983 action is relevant here because the "law of immunity in a Bivens claim against a federal official parallels that in a § 1983 claim against a state official." Crooker v. United States, 2010 WL 3860597, at *8 n.13 (D.Mass. Sept. 29, 2010) (citing Moore v. Valder, F.3d 189, 192 (D.C.Cir. 1995)); see also Butz v. Economou, 438 U.S. 478, 503-4 (1978); Harlow v Fitzgerald, 457 U.S. at 800.

The Supreme Court first defined the scope of absolute prosecutorial immunity in Imbler v. Pachtman, 424 U.S. 409, 430 (1976). The Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." Id. at 415-16. Whether a prosecutor is absolutely immune from "those aspects of the prosecutor's responsibilities that cast him in the role of an administrator or investigative officer rather than that of advocate" was left unanswered. Id. at 430-31.

The Supreme Court in Burns v. Reed, 500 U.S. 478, 493 (1991), made a fact based inquiry and held that a

10

prosecutor's administrative or investigative duties were not absolutely immune from suit.  It would be unsound policy to extend immunity to administrative and investigatory acts because "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute." Id. at 495.

Following the approach in Burns, the Court in Buckley v. Fitzsimmons, 509 U.S. 259, 261, 270 (1993), scrutinized prosecutor Fitzsimmons's actions in obtaining a murder indictment of Buckley.  A third party confessed to the murder and Buckley sued Fitzsimmons, claiming fabrication of evidence.  Id. at 264.  The Court held that absolute immunity did not apply because at the time Fitzsimmons allegedly fabricated evidence, he had no probable cause to arrest, no indictment was issued and no judicial proceeding had commenced.  Id. at 275-76.  In reaching this conclusion, the Court applied the "functional approach." Id. at 269.  The functional approach examines "the nature of the function performed, not the identity of the actor who performed it."  Forrester v. White, 484 U.S. 219, 229 (1988); Buckley v. Fitzsimmons, 509 U.S. at 273 ("actions

of a prosecutor are not absolutely immune merely because they are performed by a prosecutor").

Under the functional approach, prosecutors are entitled to absolute immunity for their acts as an advocate and only qualified immunity for other administrative actions.[1]  See Imbler v. Pachtman, 424 U.S. at 431 n.33; Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir. 1995) (functional analysis requires a "line between preparatory conduct that is merely administrative or investigative, and that which is itself prosecutorial").  The functional approach does not mean that all acts outside of the courtroom are administrative.  Imbler v. Pachtman, 424 U.S. at 431 n.33.  "[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom."  Id.  Such preliminary acts include "'the

---

[1]  The difference between absolute and qualified immunity is important:

> [A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.  The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial.

Imbler v. Pachtman, 424 U.S. at 418 n.13 (internal citations omitted).

professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation' in an official proceeding." Miller v. City of Boston, 297 F.Supp.2d 361, 371 (D.Mass. 2003) (quoting Buckley v. Fitzsimmons, 509 U.S. at 273); see also Kalina v. Fletcher, 522 U.S. 118, 128 (1997) (absolute immunity for preparation and filing of charging documents but not for certifying an affidavit which any competent witness could do). If the nature of the function requires legal knowledge and the related exercise of prosecutorial discretion, absolute immunity is available. Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009); accord Crooker v. United States, 2010 WL 3860597, at *9.

Those duties and functions "that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. at 273. For example, "when a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" Id. at 273 (internal citations omitted).

With the burden of showing that absolute immunity is justified, Burns v. Reed, 500 U.S. at 486, AUSA Sullivan

13

has shown that the decision regarding discovery disclosures are within the scope of prosecutorial protection. The Supreme Court has held that a prosecutor's determination about what to disclose or not to disclose in discovery enjoys absolute immunity. Van de Kamp v. Goldstein, 555 U.S. at 344.

In Van de Kamp, the plaintiff brought a section 1983 action against a district attorney for failure to provide the plaintiff's counsel with all relevant and potential impeaching material. Id. at 338. The Court concluded that the information sharing duty was related to administrative obligations, but "a kind that itself is directly connected with the conduct of a trial." Id. at 344. Unlike other administrative decisions such as hiring and payroll considerations, an error in the information sharing decision affects the plaintiff's specific criminal trial and thus must enjoy absolute immunity. Id.

In Van de Kamp, the plaintiff alleged injury from the prosecutor's *failure to provide* potentially exculpatory or impeaching information. Id. at 338 (emphasis added). Here, plaintiff alleges injury from AUSA Sullivan *providing* discovery containing potentially exculpatory material to all defendants arrested pursuant to the same criminal action. If the prosecutor in Van de Kamp enjoyed absolute

14

immunity for failure to provide information to a criminal defendant prior to trial, it stands to reason the converse is also true--absolute immunity for prosecutor's action in sharing information related to trial.  Therefore, decisions to provide or not provide such [discovery] information are absolutely immune from suit.[2]  See also Reid v. State of New Hampshire, 56 F.3d 332, 336-38 (1st Cir. 1995) (failure to release information specifically requested during discovery is absolutely immune); Wells v. Mariani, 2005 WL 2663041, at *3 (D.Conn. Oct. 12, 2005) ("[d]ecisions about what evidence to submit to . . . the defense are a necessary part of a prosecutor's role" and is entitled to absolute immunity); Mack v. United States, 2003 WL 24216479, at *2 (W.D.Va. May 16, 2003) (preparing witnesses and providing discovery are actions entitled to absolute immunity).  With the distribution of discovery materials considered a

---

[2]  The Supreme Court has reiterated that prosecutorial immunity reflects a "balance of evils."  See Van de Kamp v. Goldstein, 555 U.S. at 340 (quoting Gregoire v. Biddle, 177 F.2d 579, 580 (2nd Cir. 1949)):

> Although such immunity leaves the genuinely wronged criminal defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty, the alternative of qualifying a prosecutor's immunity would disserve the broader public interest . . ..

Imbler v. Pachtman, 424 U.S. at 409.

function "intimately associated with the judicial phase of the criminal process," Burns v. Reed, 500 U.S. at 492, this court agrees that AUSA Sullivan is entitled to absolute immunity.

II.  Plaintiff's Holding Cell Placement

Plaintiff additionally claims AUSA Sullivan negligently caused him emotional distress and violated his right to due process by placing him in a holding cell with other members of the gang with whom he was arrested. (Docket Entry # 20, pp. 2-4). Even when viewed in a light most favorable to plaintiff, the claim fails on the merits. There is no genuine dispute that AUSA Sullivan had any responsibility for which holding cell to place plaintiff, nor any evidence for this court to reasonably infer that AUSA Sullivan knew about plaintiff's history with the gang and the allegations regarding his brother's death.

A cause of action for injuries resulting from mere negligence is also insufficient to support a constitutional claim under Bivens.  See Davidson v. Cannon, 474 U.S. 344, 348 (1986); Daniels v. Williams, 474 U.S. 327, 333 (1986); Schomaker v. United States, 334 F.App'x. 336, 338 (1st Cir. 2009).  In Davidson, the plaintiff sought damages under section 1983 for physical injuries suffered when prison officials negligently failed to protect him from another

16

inmate.  Davidson v. Cannon, 474 U.S. at 345.  The
guarantee of due process has never been construed as a
guarantee of due care by officials.  Id. at 348.  The
Davidson Court held that negligent failure to protect the
plaintiff from unintended injury to life, liberty or
property is not a basis for a section 1983 action.  Id. at
347-48.

    Additionally, a detainee is entitled to at least as
much protection as afforded to convicted criminals under
the cruel and unusual punishment clause of the Eighth
Amendment.  City of Revere v. Massachusetts General
Hospital, 463 U.S. 239, 244 (1983); see Coscia v. Town of
Pembroke, Mass., 659 F.3d 37, 39 (1st Cir. 2011), cert.
denied, 132 S.Ct. 1558 (2012) (obligation to refrain from
treating a pretrial detainee with "deliberate indifference"
under the Eighth Amendment).  Under the Eighth Amendment,
officers are liable to convicted criminals if they exhibit
"deliberate indifference" to a substantial risk of serious
harm to the inmate.  Coscia v. Town of Pembroke, Mass., 659
F.3d at 39; see also Farmer v. Brennan, 511 U.S. 825, 835
(1994) (discussion of deliberate indifference standard
except as to excessive force claims).

    The deliberate indifference standard requires
sufficient evidence to support an inference as to the

17

subjective state of mind of the defendant.  Farmer v.

Brennan, 511 U.S. at 835.  "Proof of deliberate

indifference requires a showing of greater culpability than

negligence but less than a purpose to do harm."  Coscia v.

Town of Pembroke, Mass., 659 F.3d at 39 (citing Farmer v.

Brennan, 511 U.S. at 835); see Cortes-Quinones v. Jimenez-

Nettleship, 842 F.2d 556, 558 (1st Cir. 1988) (the plaintiff

must prove "acts or omissions so dangerous" that the

defendant's knowledge of risk can be inferred); Sires v.

Berman, 834 F.2d 9 (1st Cir. 1987) (deliberate indifference

concerns state of mind and requires treatment to be

intentional); Facey v. Dickhaut, 2012 WL 4361431, at *7

(D.Mass. Sept. 25, 2012) (violation of Eighth Amendment

requires a sufficiently culpable state of mind, one of

deliberate indifference).  The Supreme Court also made

clear that not "every injury suffered by one prisoner at

the hands of another . . . translates into constitutional

liability for prison officials responsible for the victim's

safety."  Farmer v. Brennan, 511 U.S. at 834.

Treating the facts in a light most favorable to

plaintiff as the nonmoving party, this court cannot find

that AUSA Sullivan knew or had reason to know of a violent

history between the gang and plaintiff.  Plaintiff fails to

provide any foundation for such an inference.  Plaintiff

18

only proffers that on May 29, 2008, the day of his arrest
and placement in the holding cell, he spoke to his counsel
about his concerns, and his counsel allegedly conversed
with AUSA Sullivan about the matter.  (Docket Entry # 20,
p. 4).  Plaintiff has no personal knowledge of what his
counsel said, if anything, to AUSA Sullivan.  Moreover,
there are no other supporting documents, nor further
details of when this conversation between plaintiff's
counsel and AUSA Sullivan took place to establish a
reasonable inference that AUSA Sullivan knew of the
allegations surrounding the death of plaintiff's brother
prior to plaintiff's detention.  Instead, AUSA Sullivan
declares under the penalty of perjury that she was unaware
of plaintiff's history with the gang and his brother's
death at the time plaintiff was placed in the holding cell.
(Docket Entry # 19, Ex. B, ¶ 8).  It was not until AUSA
Sullivan received a letter from plaintiff postmarked August
3, 2009 (Docket Entry # 19, Ex. B-1) that she learned of
the allegations of his brother's death at the hands of the
gang.  Lacking this temporal basis, plaintiff fails to show
that AUSA Sullivan was aware of the "facts from which the
inference could be drawn that a substantial risk of serious
harm exist[ed]," such that it would rise to the level of
deliberate indifference.  Facey v. Dickhaut, 2012 WL

19

4361431, at *7 (internal quotations and citation omitted).
Without this essential element, plaintiff fails to fulfill
his burden of demonstrating that a trier of fact could
reasonably find in his favor under Rule 56.

Furthermore, AUSA Sullivan contends, and plaintiff
does not dispute, that plaintiff's placement in the holding
cell was not the decision of AUSA Sullivan's.  This is
supported by a declaration from the United States Marshals
Service.  (Docket Entry # 19, Ex. D).  Also, plaintiff was
not placed in a cell with the two gang members accused (and
later acquitted) for his brother's death.  (Docket Entry #
19, p. 7).  In addition to failing to raise a genuine
dispute as to AUSA Sullivan's knowledge of plaintiff's
relationship with the gang, AUSA Sullivan's clear lack of
personal involvement in where to detain plaintiff likewise
entitles AUSA Sullivan to summary judgment in her favor.

CONCLUSION

In accordance with the foregoing discussion, this
court **RECOMMENDS**[3] that the motion to dismiss, or, in the

---

[3]  Any objections to this Report and Recommendation
must be filed with the Clerk of Court within 14 days of
receipt of the Report and Recommendation to which objection
is made and the basis for such objection.  See Rule 72(b),
Fed. R. Civ. P.  Any party may respond to another party's
objection within 14 days after service of the objections.

alternative, for summary judgment (Docket Entry # 18) be
**ALLOWED** on summary judgment.

                              /s/ Marianne B. Bowler
                              **MARIANNE B. BOWLER**
                              United States Magistrate Judge

Failure to file objections within the specified time waives
the right to appeal the order.